IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN HARMS,

      Petitioner,

      v.                               No. 12-3081-SAC

SAM CLINE, STEPHEN SIX
and DEREK SCHMIDT,

      Respondents.

MEMORANDUM AND ORDER

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254. Petitioner pled no contest to two counts of attempted aggravated robbery in state court, and was sentenced to 128 months imprisonment. Petitioner contends that the trial court violated the plea agreement and due process, that the district court deprived him of his Sixth and Fourteenth Amendment rights by violating the rule of *Apprendi v. New Jersey,* and that the State violated the *ex post facto* doctrine in applying a statute of limitations which was not in effect when his crimes took place.

## I. Procedural History

The procedural history of this case has been established by prior decisions including the following: the Kansas Court of Appeals (KCOA) decision in Petitioner's direct appeal of his sentence, *State v. Harms,* No.

97,680, 2008 WL 1868632 (Kan.Ct.App., April 25, 2008) (Unpublished

Opinion); the KCOA's denial of Petitioner's motion to correct illegal sentence,

*State v. Harms*, No. 102,896, 2010 WL 5490734 (Kan.Ct.App., Dec. 23,

2010); and the KCOA's denial of Petitioner's K.S.A. 60-1507 motion. *Harms*

*v. State*, No. 104,129, 2011 WL 3795472 (Kan.Ct App., August 26, 2011).

In 2004, Petitioner was charged in federal court with bank robbery of

the Commerce Bank in Garden City, Kansas, on March 30, 2004. He entered

a plea agreement and was sentenced on September 1, 2004, to 63 months

of imprisonment and two years' supervised release.

In February of 2006, the State filed a complaint against the defendant

charging the following counts: (1) aggravated robbery at Western State

Bank on March 3, 2004; (2) aggravated robbery at Commerce Bank on

March 30, 2004; (3) attempted aggravated robbery at Western State Bank

on March 29, 2004; (4) conspiracy to commit aggravated robbery at

Western State Bank on March 3, 2004; and (5) conspiracy to commit

aggravated robbery at Commerce Bank on March 30, 2004. Count 2 was

charged by the State based upon its dual sovereignty, as it was based on

the same offense to which Petitioner had already entered a guilty plea in

federal court.

The State later filed an amended complaint which dropped all counts

related to the Commerce Bank robbery and charging Petitioner with only the

following counts: (1) attempted aggravated robbery at Western State Bank

on March 3, 2004, and (2) attempted aggravated robbery at Western State Bank on March 29, 2004. Petitioner entered a no contest plea to those counts and the State dismissed the remaining Counts of the original complaint.

In the plea agreement, the State agreed to recommend a presumptive 52–month sentence if Petitioner's criminal history score was as anticipated. If Petitioner's criminal history score were higher, the State agreed to recommend a downward departure that would arrive at the same 52–month sentence. The PSIR later reflected Petitioner's criminal history score as higher than the parties had anticipated because it included Petitioner's 2004 federal bank robbery conviction which had been charged in Petitioner's original state complaint based on dual sovereignty. The PSIR stated a 114-month mitigated sentence, a 120–month standard sentence and a 128-month aggravated sentence for the primary offense of attempted aggravated robbery. R. Vol. I, p. 16.

Petitioner objected to his criminal history score and moved for a downward durational departure sentence of 52 months' imprisonment. At sentencing, the State did not object to that motion but asked that the sentence run consecutively to Petitioner's federal sentence. The sentencing court denied Petitioner's motion and classified the defendant's criminal history as "B" based in part on his federal conviction. On count 1, the court sentenced the defendant to 128 months in prison, the aggravated number

within the presumptive sentencing range. On count 2, the defendant was
sentenced to 34 months in prison, the aggravated number within the
presumptive sentencing range, to run concurrently to count 1. The court
ordered his state sentence to run consecutively to his federal sentence for
robbery of Commerce Bank.

This Court adopts other facts stated in the prior opinions and shall not
repeat them except as necessary to the analysis of this petition. *See* 28
U.S.C. § 2254(e)(1) (a court presumes that the factual findings of the state
court are correct unless the petitioner rebuts that presumption by "clear and
convincing evidence."); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

## II. AEDPA Standard

The habeas petition is governed by the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA"). AEDPA "erects a formidable barrier to
federal habeas relief," *Burt v. Titlow*, ___ U.S. ___ , 134 S.Ct. 10, 16, 187
L.Ed.2d 348 (2013), and "requires federal courts to give significant
deference to state court decisions" on the merits. *Lockett v. Trammel*, 711
F.3d 1218, 1230 (10th Cir. 2013); *see also Hooks v. Workman*, 689 F.3d
1148, 1162–63 (10th Cir. 2012) ("This highly deferential standard for
evaluating state-court rulings demands state-court decisions be given the
benefit of the doubt." (quotations omitted)).

Under AEDPA, where a state prisoner presents a claim in habeas
corpus and the merits were addressed in the state courts, a federal court

may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 783–84, 178 L.Ed.2d 624 (2011).

"Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." *Lockett*, 711 F.3d at 1231 (quotations omitted). A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quotations omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams v. Taylor*, 529 U.S. 362, 407–08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme

Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir.2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). In making this assessment, the Court reviews the factual findings of the state court for clear error, reviewing only the record that was before the appellate court. *Cullen v. Pinholster*, –––U.S. ––––, ––––, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

A writ of habeas corpus may issue only when the petitioner shows "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 786 (emphasis added). "Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* " 'If this

6

standard is difficult to meet'—and it is—'that is because it was meant to be.'
" *Titlow*, 134 S.Ct. at 16 (quoting *Richter,* 131 S.Ct. at 786). *See Frost v. Pryor*, __ F.3d __, 2014 WL 1647013 (10th Cir. April 25, 2014).

## III. Issues

### A. Sentence Longer than in Plea Agreement

Petitioner first contends that the trial court violated due process by sentencing him to a term of imprisonment longer that that stated in his plea agreement.

### State Court Holding

On direct appeal, the KCOA analyzed Petitioner's claim of error under state law, then concluded:

> The district court did not err by including the defendant's federal conviction in his criminal history. The definition of "prior conviction" set forth in K.S.A. 21–4710(a) does not exclude the defendant's federal conviction because the federal conviction was not obtained in the current case and the state charges based on the federal conviction were dismissed. Furthermore, because the federal conviction was not an element the State was required to prove for the attempted aggravated robbery conviction, K.S.A. 21–4710(d)(1) is inapplicable.

*State v. Harms*, 2008 WL 1868632, 2-3.

The KCOA addressed the broader issue in reviewing the denial of Petitioner's 60-1507 motion. It found that the State had not breached the plea agreement, that the district court was not bound by the parties' plea agreement or sentencing recommendations, that Kansas courts have no duty to permit a defendant to withdraw a plea if the court departs from the

7

sentencing recommendation in the plea agreement, and that Petitioner had intentionally and voluntarily relinquished his known trial rights. 2011 WL 3795472 at 1-2. *See McGoldrick v. McKune*, 2006 WL 1302197 at 3 (D. Kan. May 10, 2006).

### Habeas Review

This court is bound by a state court's interpretation of its own law. *See Estelle,* 502 U.S. at 67-68. Thus to the extent the KCOA's decisions rested on its interpretation of state law, no habeas review is possible.

But Petitioner also raises due process concerns. That clause requires state courts to follow established legal procedures and the law before depriving an individual of his life, liberty, or property. *Romero v. Janecka,* 209 Fed. Appx. 746, 748 (10th Cir. 2007). The court assumes, in an abundance of caution, that Petitioner's claims of error below included constitutional questions.

Petitioner asserts that clearly-established federal law in *Boykin v. Alabama* held that Fed. R. 11 applies to states. But Petitioner misreads that case. Rule 11 does not apply in Kansas state court proceedings. *Beavers v. Anderson*, 474 F.2d 1114, 1117 (10th Cir. 1973); *Miles v. Dorsey,* 61 F.3d 1459, 1467 (10th Cir. 1995); *Rosa v. Williams*, 422 Fed.Appx. 730, 734 (10th Cir. 2011); *Warren v. Gartman,* 297 Fed.Appx. 767, 769 (10th Cir. 2008). *Boykin* does, however, hold that principles of due process apply to the procedure of accepting a plea.

> In *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, a federal court rule was held to require that the sentencing federal court not accept a plea of guilty until and unless the defendant was addressed personally by the court, that the federal court had determined there was a factual basis for the plea and that the defendant understood the nature of the charge and the consequence of the plea.
>
> In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, this federal rule in *McCarthy* was fastened on the states as a requirement of due process through the Fourteenth Amendment.
>
> In Kansas, statutory requirements [to K.S.A.1971 Supp. 22-3210] acknowledge the thrust of these federal cases.

*Widener v. State*, 210 Kan. 234, 237-38 (1972). In Kansas, K.S.A. § 22-3210 embodies the due process requirements as interpreted by the Supreme Court in *Boykin*. *See State v. Moses*, 280 Kan. 939, 946 (2006) ("K.S.A. 22–3210 was enacted to ensure compliance with the due process requirements set out by the Court in *Boykin*. *State v. Heffelman,* 256 Kan. 384, 391, 886 P.2d 823 (1994); *Trotter v. State,* 218 Kan. 266, 268, 543 P.2d 1023 (1975).").

Petitioner appears to believe that because some of the due process requirements reflected in Rule 11 apply to the states through *Boykin*, Rule 11(c)(1)(C) also applies to the states. That rule permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," and "binds the court [to the agreed-upon sentence] once [it] accepts the plea agreement." *Freeman v. United States*, ___ U.S. ___, 131 S.Ct. 2685, 2687, 180 L.Ed.2d 519 (2011).

> Federal Rule of Criminal Procedure 11(c)(1)(C) states that, in structuring a guilty plea, the parties may "agree that a specific sentence or sentencing range is the appropriate disposition of the case, … (such a recommendation or request binds the court once the court accepts the plea agreement)."

*United States v. Silva*, 413 F.3d 1283, 1284 (10th Cir. 2005). Petitioner asserts that he and the State bargained for a specific sentence, and once the court stated that it accepted Petitioner's pleas of no contest, it was bound to honor the parties' agreement as to the length of sentence.

But Petitioner's plea agreement was not an 11(c)(1)(C) plea because it was not made in federal court and this rule does not apply in Kansas state courts. *See Miles,* 61 F.3d at 1467. Under Kansas law, plea agreements and sentencing recommendations do not bind the sentencing court. *See State v. Chetwood,* 38 Kan.App.2d 620, 624–25 (2007), *rev. denied* 286 Kan. 1181 (2008); K.S.A. 21–4713 (permitting a prosecutor to *recommend* a sentence in a plea agreement, and prohibiting any agreement to exclude a prior conviction from defendant's criminal history); *State v. Ford,* 23 Kan.App.2d 248, 253, 930 P.2d 1089 (1996), *rev. denied* 261 Kan. 1087 (1997), *overruled in part on other grounds by State v. Schow,* 287 Kan. 529, 541, 197 P.3d 825 (2008) (parties to a plea agreement cannot contract for specific sentence); *State v. Hill,* 247 Kan. 377, 385 (1990). Parties in Kansas state court are not permitted to contract for a specific sentence or stipulate to a certain criminal history in a plea agreement, and the sentencing court is required to apply the actual criminal history score, not a score to which the

parties may have agreed. See *State v. Boley,* 279 Kan. 989, 993, 113 P.3d 248 (2005); *Ford,* 23 Kan.App.2d at 253. The court is free to ignore the parties' agreement and impose any lawful sentence, including the aggravated grid-box sentences consecutively. *State v. Holmes*, 2005 WL 2951424, 5 (Kan.App. 2005).

Similarly, the Tenth Circuit has repeatedly found that a sentencing judge is not bound by the terms of a plea agreement, and may consider counts dismissed as a result of a plea bargain. *See United States v. Trujillo,* 537 F.3d 1195, 1201-02 (10th Cir. 2008) (stating that "a plea agreement cannot preclude the court from considering the facts underlying a dismissed count"); *see also United States v. Pinson,* 542 F.3d 822, 836 (10th Cir. 2008) ("[W]e have repeatedly stated that '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.' ") (quoting *United States v. Magallanez,* 408 F.3d 672, 684 (10th Cir. 2005)).

Petitioner does not allege that his attorney rendered ineffective assistance in counseling him about the plea agreement, and a mere inaccurate prediction by counsel of the sentence a defendant might receive does not constitute ineffective assistance of counsel. The United States Supreme Court has held: "Waiving trial entails the inherent risk that the

good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Similarly, the Tenth Circuit holds that " '[a]n erroneous sentence estimate by defense counsel does not render a plea involuntary.... And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary.' " *Fields v. Gibson,* 277 F.3d 1203, 1214 (10th Cir. 2002) (quoting *Wellnitz v. Page,* 420 F.2d 935, 936-37 (10th Cir. 1970)). See also *State v. Solomon,* 257 Kan. 212, Syl. ¶ 7, 891 P.2d 407 (1995).

Nor do the facts show that the prosecutor breached the plea agreement. *Compare White v. Gaffney*, 435 F.2d 1241 (10th Cir. 1971) (granting habeas petition to permit defendant to withdraw his guilty plea where the prosecution breached the agreement regarding his recommendation of a term of imprisonment).

Instead, Petitioner contends that the district court judge should have told him that he might decide to reject the recommended sentence after reviewing the presentence report or other matters, as he believes Fed.R.Crim.P. Rule 11(c)(5) requires. But that rule is inapplicable in Kansas state courts, and applies only when the court rejects certain plea agreements.

Petitioner generally contends that he did not understand the direct consequence of his plea because he thought he would be sentenced to only 52 months. This Court has reviewed the transcript of the plea hearing and finds that the sentencing court found there was a factual basis for the plea, and secured Petitioner's understanding of the following facts: that if he were to be convicted of the crime he could be required to serve, depending on his criminal history, not less than 31 months and not more than a hundred and thirty-six months in custody, p. 16-18; that if he were convicted of both charged offenses, at the time of sentencing the Court had the discretion to order that the sentences run consecutively rather than concurrently, p. 18; that Petitioner understood the difference between consecutive and concurrent sentences, p. 18; "that when it comes to sentencing, … th[e] Court is not bound by the bargain or any recommendations that may be made in relation to sentencing," p. 23; that no one had promised Petitioner that the Court would be lenient with him or grant him probation or parole in return for his pleas of no contest to either or both of the counts charged, p. 23-24; and that a presentence investigation report would be done before sentencing, p. 31.

Having reviewed the facts of record and the law in detail, the court finds that the defendant understood the nature of the charge and the consequence of the plea, so his plea was knowing and voluntary. That the sentence was longer than what Petitioner reasonably expected does not

13

violate due process or other clearly established federal law or render his plea constitutionally invalid.

## B. Aggravated Sentence

Petitioner next contends that the district court violated his Sixth and Fourteenth Amendment rights by sentencing him to the upper range of the presumptive grid block for his convictions, because the facts warranting the aggravated sentence were not proven to a jury beyond a reasonable doubt. Petitioner contends his sentence is thus contrary to clearly established federal law as expressed in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), and *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

*Apprendi* held that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Apprendi,* 530 U.S. at 490. *Cunningham* found California's determinative sentencing law unconstitutional because it permitted the judge to increase the middle-term sentence to an upper-term sentence based only on judge-found facts, and precluded the judge's exercise of discretion. Based upon the language of the state statute, the court found the prescribed " 'statutory maximum' " sentence described by *Apprendi* to be the middle term in California's presumptive sentencing grid block.

Respondent counters that Petitioner's within-the-guidelines sentence is not reviewable under Kansas law, as found in *State v. Johnson,* 286 Kan. 824 (2008):

> The Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21–4701 *et seq.*, ... , provides that "the appellate court shall not review: (1) Any sentence that is within the presumptive sentence for the crime." K.S.A 21–4721(c)(1). KSGA defines "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history." K.S.A. 21–4703(q).

*Johnson*, 286 Kan. at 219-220. Thus under Kansas law, when a defendant is sentenced to any term within the presumptive grid block for his convictions, the appellate court lacks jurisdiction to review that sentence. *Johnson*, 286 Kan. at 851-52 (distinguishing the relevant Kansas statutes from the California statutes found unconstitutional in *Cunningham*).

Petitioner replies that Kansas law may preclude review of this issue *on direct appeal*, but poses no procedural bar when this issue is raised in a 60-1507 motion, as here. This view holds some support in Kansas law.

> Kansas case law ... plainly holds that constitutional challenges to presumptive sentences under the KSGA cannot be reviewed on direct appeal and must be raised in post-conviction proceedings under K.S.A. § 60–1507. *Id.* at 7–8 (citing *State v. Lewis*, 27 Kan.App.2d 134, 140–42, 998 P.2d 1141 (Kan.Ct.App.) ("[B]ecause the issue is not one that could have been presented on direct appeal, it necessarily is one whose only chance of review is by collateral attack*, i.e.,* a K.S.A. 60–1507 motion."), *rev. denied*, 269 Kan. 938 (Kan. 2000).

*Hopper v. Cline*, 2011 WL 6372960, 3 (D.Kan. 2011). *See State v. Mitchell,* 45 Kan.App.2d 592, 605 (2011); *State v. Lewis*, 27 Kan. App.2d 134 (2000)

(holding defendant's claim that the presumptive sentence was cruel and unusual punishment was statutorily barred from being considered on direct appeal, but could be raised in a post-sentence collateral attack). And here, the KCOA addressed this claim on the merits, instead of applying the statutory bar, when Petitioner appealed his 60-1507 decision. *Harms v. State*, 2011 WL 3795472 at 2. This court shall do the same.

## State Court Holding

On appeal from the denial of Petitioner's 60-1507 motion, the KCOA rejected this claim on the merits, stating:

> With respect to Harms' constitutional claim under *Cunningham,* the Kansas Supreme Court has since addressed the issue and rejected Harms' position in *State v. Johnson,* 286 Kan. 824, 851, 190 P.3d 207 (2008). The court in *Johnson* held that K.S.A. 21–4704(e)(1) grants a judge discretion to sentence a criminal defendant to any term within the presumptive grid block as determined by the conviction and the defendant's criminal history. Accordingly, the sentencing judge need not conduct any fact-finding or state factors on the record.
>
> We are duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *Buchanan v. Overley,* 39 Kan.App.2d 171, 175–76, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008). We perceive no indication that the court is departing from *Johnson.* The district court did not err in denying relief based on this contention.

*Harms v. State*, 2011 WL 3795472 at 2.

*Johnson* held that the prescribed " 'statutory maximum' " sentence described by *Apprendi* is the upper term in the presumptive sentencing grid block:

> ... we conclude K.S.A. 21–4704(e)(1) grants a judge discretion to sentence a criminal defendant to any term within the presumptive grid

16

> block, as determined by the conviction and the defendant's criminal
> history. The judge need not conduct any fact finding or state factors
> on the record. Consequently, the prescribed " 'statutory maximum' "
> sentence described by *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, is
> the upper term in the presumptive sentencing grid block. K.S.A. 21–
> 4704(e)(1) is constitutional under the Sixth and Fourteenth
> Amendments to the United States Constitution and does not violate
> the holdings in *Apprendi* or *Cunningham.*

*Johnson*, 286 Kan. at 851.

## Habeas Review

The federal habeas court "is bound, in the absence of any violation or

misapplication of clearly established federal law, by a state court's

interpretation of its own law." *See Hobbs v. McKune,* 332 F. App'x 525, 531

(10th Cir. 2009) (*citing Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct.

475, 116 L.Ed.2d 385 (1991)); *Montez v. McKinna,* 208 F.3d 862, 865 (10th

Cir. 2000) (challenges to the Kansas courts' interpretation of Kansas laws

and claims of violation of state laws are simply not cognizable in a federal

habeas action.). The KCOA reasonably distinguished the relevant Kansas

statutes from the California statutes found unconstitutional in *Cunningham.*

*See Johnson*, 286 Kan. at 851-52.

Petitioner contends that when his offenses were committed, the

relevant statute required a middle-range sentence, in stating:

> The sentencing court has discretion to sentence at any place within the
> sentencing range. The sentencing judge shall select the center of the
> range in the usual case and reserve the upper and lower limits for
> aggravating and mitigating factors insufficient to warrant a departure.

But this very language, including the argument that "shall" is mandatory, was examined in depth and was reasonably rejected by the Kansas Supreme Court. *See Johnson,* 286 Kan. at 824, 190 P.3d 207. *See also Winfield v. Mckune*, 2011 WL 4688854 (D.Kan. 2011); *Hopper v. Cline*, 2011 WL 6372960 (D.Kan. 2011) (rejecting the same federal constitutional arguments made by Petitioner). The Court finds that *Johnson is* neither contrary to, nor an unreasonable application of, *Apprendi* or *Cunningham.* Thus neither the state court's interpretation of K.S.A. § 21–4705 (now repealed) nor Petitioner's sentence thereunder violates the clearly established Supreme Court precedent of *Apprendi* or *Cunningham.*

### C. Ex Post Facto Doctrine

Petitioner contends that the statute of limitations for his crime had expired by the time he was tried, and that the State applied a longer statute of limitations which had been enacted after his crime was committed, in violation of the ex post facto doctrine.

### State Court Holding

In ruling on the appeal from Petitioner's 60-1507 motion, the KCOA addressed this claim of trial error, finding:

> Finally, Harms argues that the statute of limitations for his crime had expired by the time he was tried. He acknowledges that a complaint was timely filed. However, he contends that a warrant was not timely served, meaning that the prosecution did not officially commence within the limitations period. Harms admits that he did not raise the issue in district court.

18

> This claim is a claim that the district court erred at trial. Trial errors are to be corrected by direct appeal, not in collateral K.S.A. 60–1507 proceedings. Harms does not argue that any exception to this rule applies. Further, he attempts to predicate error by the district court on a matter that was never submitted to the district court for its consideration. Having failed to raise the issue before the district court, the issue is now waived. See *In re Care & Treatment of Miller*, 289 Kan. 218, 224–25, 210 P.3d 625 (2009).

*Harms v. State*, 2011 WL 3795472 at 2.

## Habeas Review

It is well established that a federal court may not review a habeas claim by a state prisoner if the decision by the state court rests on a state law ground that is independent of the federal question and adequate to support it. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-2554, 115 L.Ed.2d 640 (1991). The KCOA relied on established Kansas law that issues not raised before the district court cannot generally be raised on appeal. That rule is independent from the federal law that governs Petitioner's constitutional claims, and Kansas appellate courts apply that rule evenhandedly and often. *See, e.g.*, *In re Miller,* 289 Kan. 218, 224-25 (2009); *Miller v. Bartle,* 283 Kan. 108, 119 (2007); *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268 (2003) (applying the "fundamental rule of appellate procedure that issues not raised before the trial court cannot be raised on appeal.").

Therefore, this court cannot reach the merits of this issue on habeas review unless the petitioner shows cause for the default and actual prejudice resulting from the alleged violation of federal law. *Coleman,* 501 U.S. at 751.

That procedural bar can be overcome in exceptional cases if the petitioner makes a compelling claim of actual innocence, *House v. Bell*, 547 U.S. 518, 522, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), but Petitioner makes no such showing in this case. Given that Petitioner pled no contest to the two charged offenses and admitted that the state could prove their elements, no credible claim of actual innocence could succeed.

But ineffective assistance of counsel can be cause for procedural default, *Murray v. Carrier,* 477 U.S. 478, 488 (1986), and Petitioner contends that his trial counsel was ineffective in not moving to dismiss the complaint based on its untimeliness. This claim was not raised in state court, however, and claims not raised in state court usually cannot establish "cause" for petitioner's default. *See Murray,* 477 U.S. at 488 (claim for ineffective assistance of counsel cannot constitute cause if it was not fully presented in the state courts); *Sherrill v. Hargett*, 184 F.3d 1172, 1176 (10th Cir. 1999). But Petitioner contends that the court should have appointed counsel to represent him in his § 60-1507 motion, and that his failure to raise this claim in his § 60-1507 proceeding should be overlooked since he acted pro se.

As support, Petitioner cites *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 1316-19, 182 L.Ed.2d 272 (2012), which reasoned:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-

review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

*Martinez,* ___ U.S. ___, 132 S.Ct. at 1318-1319. The Supreme Court thus allows a federal habeas court to find "cause," excusing a defendant's procedural default, where the following conditions are met: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] … be raised in an initial-review collateral proceeding." *Martinez, supra,* at ————, 132 S.Ct., at 1318–1319, 1320–1321.

Petitioner has not shown that Kansas law requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, as

*Martinez* commands. But the Supreme Court has recently expanded the *Martinez* exception, applying it to those states in which collateral review normally is the *preferred* procedural route for raising ineffective assistance of trial counsel claims. *Trevino v. Thaler*, __ U.S. __, 133 S.Ct. 1911 (2013). Thus where a state's procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, the *Martinez* holding applies. *Id.*, __ U.S. __, 133 S.Ct. 1921.

The Court believes that Petitioner falls within *Trevino's* provisions. Kansas courts have held that "[a] 60-1507 motion is a proper method for raising an ineffective assistance of counsel claim," *Barker v. State*, 2009 WL 1212515 (Kan.App. 2009); *Bledsoe v. State,* 283 Kan. 81, 88–89, 150 P.3d 868 (2007), and that "[o]rdinarily, an ineffective assistance of trial counsel claim is not suitable for resolution on direct appeal." *Rowland v. State*, 289 Kan. 1076, 219 P.3d 1212 (2009). And the same practical considerations which led to the *Trevino* holding, such as the need for a new lawyer, the need to expand the trial court record, and the need for sufficient time to develop the claim, argue strongly for initial consideration of Petitioner's claim during collateral, rather than on direct, review. But Kansas does permit a claim of ineffective assistance of trial counsel which becomes apparent during the pendency of a direct appeal to be raised on direct

appeal and remanded for the trial court to determine allegations of ineffective assistance of counsel as "an alternative remedy to K.S.A. 60–1507." *State v. Van Cleave,* 239 Kan. 117, 120–21, 716 P.2d 580 (1986). *See generally United States v. Oviedo-Tagle*, 529 Fed.Appx. 944, 946 - 947 (10th Cir. 2013) (holding that "a defendant must generally raise claims of ineffective counsel in a collateral proceeding, not on direct review.").

Petitioner may thus establish cause under *Martinez*, but only if he shows that his ineffective-assistance-of-trial-counsel claim is "substantial." *Martinez*, 132 S.Ct., at 1318–1319, 1320–1321. Kansas law does not ensure that counsel is appointed for all § 60-1507 motions, but requires the court to appoint counsel if it finds that the motion presents substantial questions of law or triable issues of fact. Kan. Stat. Ann. § 22–4506 (2007). Here, the trial court did not appoint counsel for Petitioner, so it necessarily found that Petitioner's claims were not substantial.

In an abundance of caution, the court examines *de novo* the merits of the ineffective assistance of counsel claim, which is tied to the merits of the underlying issue. *See Strickland v. Washington,* 466 U.S. 668, 691–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requiring a showing that counsel's performance was objectively unreasonable and a reasonable probability that the outcome would have been different).

### Ex Post Facto Clause

The *ex post facto* clause only prohibits enactment of statutes that (1) criminalize an act previously committed that was innocent when committed; (2) enhance the penalties for a crime after its commission; or (3) deprive a defendant of any defense available according to law when the act was committed. *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990).

Petitioner committed his offenses in March of 2004, when the statute of limitations for his crimes was two years. K.S.A. 21-3106 (2001). In 2005, the statute of limitations was changed to five years. K.S.A. 2005 Supp. 21-3106. Petitioner was charged with these crimes in February of 2006, within the original two-year statute, but was not arrested for them until June of 2006, outside that two-year period. Petitioner contends that because of undue delay between the charge and the arrest, his prosecution was not actually "commenced" as defined under state law until he was arrested; by that date, the two-year limitations period had expired so the five-year statute of limitations was retroactively applied to him in violation of the constitutional prohibition against *ex post facto* laws.

Clearly established federal law holds that a State law enacted *after the expiration* of a previously-applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution. *Stogner v. California*, 539 U.S. 607, 619, 123 S.Ct. 2446,

2454 (2003). But that rule does not apply to *unexpired* statutes of limitations. *Stogner*, 539 US at 618. Thus application of a statute of limitations extended before the original limitations period has expired, as here, does not violate the e*x post facto* clause. *See United States v. Taliaferro*, 979 F.2d 1399, 1402 (10th Cir. 1992) (holding that the "application of an extended statute of limitations to offenses occurring prior to the legislative extension, where the prior and shorter statute of limitations has not run as of the date of such extension, does not violate the *ex post facto* clause," citing *United States v. Powers,* 307 U.S. 214, 217-18, 59 S.Ct. 805, 807, 83 L.Ed. 1245, *reh'g denied,* 308 U.S. 631, 60 S.Ct. 66, 84 L.Ed. 526 (1939)).

The Tenth Circuit explained that the rationale for this distinction is a matter of fundamental fairness:

> We are, however, concerned with a statute which increases the statute of limitations from five to ten years for an offense committed prior to the enactment of the increased limitation where the prior five-year statute had not already run. In this regard, we are in accord with the rationale in *Falter* where Judge Learned Hand, speaking for the court, stated:
>
> > Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.

*Taliaferro*, 979 F.2d at 1403, quoting *Falter v. United States*, 23 F.2d 420, 425-26 (2d Cir.), *cert. denied*, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928). *Cf. Commonwealth v. Duffy,* 96 Pa. 506, 514, 1880 WL 13543 (1881) ("[I]n any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws"). Thus lengthening the period of limitations before the original time period expires does not violate the *ex post facto* clause of the Constitution. *Taliaferro*, 979 F.2d at 1403. Such is the case here.

An ineffective assistance of counsel claim based on this issue would therefore lack merit. Petitioner cannot show that his appellate counsel's performance was objectively unreasonable because counsel cannot be found ineffective for failing to raise meritless claims. *See Strickland,* 466 U.S. 668, 691–96. Thus no cause avoids the procedural bar, and the ex post facto claim fails on its merits as well.

**IV. Motion to File Long Traverse**

Petitioner has moved to file a traverse longer than the stated page limits. This request (Dk. 24, Att. 1) is granted.

## V. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005) *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## VI. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). *See United States v. Bedford,* 628 F.3d 1232 (10th Cir. 2010). The Court finds that Petitioner has not met this standard as to any issue squarely presented in this case, so denies a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 13th day of June, 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge